UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | | |
|---|---|---|
| DANNY RAY HENSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 2:13-cv-76-JRG-DHI |
| | ) | |
| JOHN F. DUGGER, Jr., MICHAEL J. | ) | |
| LAGUARDIA, SHERIFF RONNIE LAWSON, | ) | |
| HAWKINS COUNTY JAIL, HAWKINS | ) | |
| COUNTY JAIL ADMIN., HAWKINS COUNTY | ) | |
| JAIL STAFF, DR. MATTHEWS, NURSING | ) | |
| STAFF, LIEUT. GALLION, AUTUMN | ) | |
| ARMSTRONG, PAUL MORRISON, SCOTT | ) | |
| WILLIAMS, BILL HENARD, CLIFF EVANS, | ) | |
| JAMES WEBE, BOBBY MATTHEWS, ROY | ) | |
| MATTHEWS, TYLER LAW, JOHN NORTH, | ) | |
| JESSEE WILLIAMS, DEPUTY KEVIN | ) | |
| JOHNSON, DEPUTY SKOALFIELD, DEPUTY | ) | |
| MORRISON, DEPUTY MIKE L/N/U, DEPUTY | ) | |
| COLLINS, DEPUTY COREY, DEPUTY | ) | |
| YOUNG and GARY LAWSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM and ORDER

This *pro se* civil rights complaint under 42 U.S.C. § 1983 was filed by former prisoner Danny Ray Hensley while he was confined in the Hawkins County jail. Plaintiff application to proceed without prepayment of the fees and costs is **GRANTED** (Doc. 1).

### I. Screening

Under the Prison Litigation Reform Act (PLRA), district courts must screen prisoner complaints (including those filed while a plaintiff is incarcerated) and *sua sponte* dismiss those

that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g., Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).

> Responding to a perceived deluge of frivolous lawsuits, and, in particular, frivolous prisoner suits, Congress directed the federal courts to review or "screen" certain complaints sua sponte and to dismiss those that failed to state a claim upon which relief could be granted, that sought monetary relief from a defendant immune from such relief, or that were frivolous or malicious.

*Id.* at 1015-16 (6th Cir. 1999) (citing 28 U.S.C. §§ 1915(e)(2) and 1915A).

In screening complaints, the Court bears in mind the rule that *pro se* pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court examines the complaint in light of those requirements.

## II. Review of the Complaint

### A. Suable Defendants

At the outset, the Hawkins County Jail, one of the named defendants, is a building and not a suable entity under § 1983. *See Monell v. Department of Social Services*, 436 U.S. 658, 688-90 & n.55 (1978) (for purposes of a § 1983 action, a "person" includes individuals and "bodies politic and corporate"); *Marbry v. Correctional Medical Services*, 2000 WL 1720959, *2 (6th Cir. Nov. 6, 2000) ("[T]he Shelby County Jail is not an entity subject to suit under § 1983.") (citing *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991)); *Cage v. Kent County Corr.*

2

*Facility*, 1997 WL 225647, *1 (6th Cir. May 1, 1997) (("The district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983.").

Likewise, the Hawkins County Jail Administration, the Hawkins County Jail Staff, and the Hawkins County Jail Nursing Staff are not suable entities either. *See Hix v. Tennessee Dept. of Corrections*, 196 F. App'x 350, 355 (6th Cir. Aug. 22, 2006) ("[W]e conclude that the defendant medical departments are not 'persons' under § 1983."); *Horton v. Hamblen County Jail Medical Staff*, 2007 WL 172523, *1 (E.D. Tenn. Jan. 18, 2007) (concluding that the jail medical staff is a non-suable entity under § 1983); *Sullivan v. Hamilton County Jail Staff*, 2006 WL 1582418, *3 n. 1 (E.D. Tenn. June 5, 2006) (noting that the jail's medical staff and jail staff are subdivisions of the sheriff's department and not a legal entity subject to being sued) (citing to *Fischer v. Cahill*, 474 F.2d 991, 992 (3rd Cir.1973) for its holding that a state prison medical department is not a "person" under § 1983)); *see also Holifield v. Mobile County Sheriff's Dept. of Mobile*, 2008 WL 2246961, *5 (S.D.Ala. May 29, 2008) (finding that the Mobile County Jail Medical Unit was a subdivision of the jail and not a distinct legal entity which could be sued under § 1983).

Thus, any allegations asserted against these four defendants fail to state a claim for relief and they are **DISMISSED** from this lawsuit.

### B. Injunctive Relief

The jurisdiction of federal courts is limited to "cases and controversies." U.S. CONST. art. III, § 2, cl.1. A case becomes moot "when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome." *Cleveland Branch, NAACP v. City of Parma,* 263 F.3d 513, 530 (6th Cir. 2001) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Here, plaintiff seeks a transfer to another facility and other forms of injunctive relief

from the alleged wrongful treatment to which he was subjected at the Hawkins County jail, but he has been released from confinement and is no longer housed in that facility (Doc. 3). Clearly, a transfer is not feasible under these circumstances. Also, deterrence of the alleged unconstitutional conditions and treatment at the Hawkins County jail on behalf of other inmates would provide plaintiff no benefit because he is not presently confined in that institution and does not indicate that he expects to be imprisoned in there in the future. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (noting that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

Thus, plaintiff's claims for injunctive relief are **MOOT**, s*ee Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996), and they are **DISMISSED**.

## C. Plaintiff' Allegations

The Court has grouped together related claims asserted in the complaint.

### 1. Access to the Courts

Plaintiff alleges that he has been denied access to law books in his ongoing case and that his legal papers have been seized (Doc. 2, Compl. at 3-4).

Prisoners have a constitutional right of access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), but no abstract, freestanding right to a law library in prison. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). To state a claim for denial of access to the courts, a plaintiff must show prejudice, such as the late filing of a court document or the dismissal of a non-frivolous claim resulting from the inadequate jail law library. *Pilgrim v. Littlefield*, 92 F.3d 414, 415-16 (6th Cir. 1996) (citing *Lewis*, 518 U.S. at 351). Plaintiff has failed to allege any actual injury caused by the lack of law library or the removal of his legal papers.

4

Additionally, "a prisoner's constitutionally-guaranteed right of access to the courts has been protected when a state provides that prisoner with either the legal tools necessary to defend himself, e.g., a state-provided law library, or the assistance of legally-trained personnel." *Holt v. Pitts,* 702 F.2d 639, 640 (6th Cir. 1983) (citing *Bounds* and *Avery v. Johnson*, 393 U.S. 483 (1969)). Since plaintiff has sued his defense attorney for alleged missteps in representing him in his state criminal case, he has been furnished with the requisite legal tools and, "[a]s a matter of law, . . . the state [has] fulfilled its constitutional obligation to provide [him] with full access to the courts." *Id.*

Plaintiff has failed to state a First Amendment claim entitling him to relief, and the claim is **DISMISSED**.

### 2. *Younger* Doctrine

Plaintiff alleges that John F. Dugger, Jr., the state criminal court judge who presided over plaintiff's state criminal proceedings, failed to follow prescribed sentencing rules and that his defense attorney failed to object to those and other judicial errors and generally performed incompetently in representing him.

It is clearly settled that this Court must stay its hand in a section 1983 claim until such time as a criminal defendant proves through the state system that his conviction and incarceration were in fact illegal. *Hadley v. Werner*, 753 F.2d 514, 516 (6th Cir. 1985). The law is also settled that a federal court should not interfere in pending state court proceedings absent the threat of "great and immediate" irreparable injury, which are not present in this case. *Younger v. Harris*, 401 U.S. 37, 46 (1971). Plaintiff alleges that he is scheduled for a resentencing hearing in the state court and, therefore, plaintiff's complaints that his rights are being violated in connection with his pending state criminal case should first be addressed by those state courts.

5

All such claims are **DISMISSED** without prejudice.

3.  **Judicial Immunity**

Plaintiff's suit for damages against Judge Dugger is wanting in another respect.

The doctrine of judicial immunity applies, and the law in this arena has been summarized by the Sixth Circuit:

> It is a well-entrenched principle in our system of jurisprudence that judges are generally absolutely immune from civil suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9, 112 S.Ct. 286, 287, 116L.Ed.2d 9 (1991); *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872). Immunity from a § 1983 suit for money damages is no exception. *See Pierson*, 386 U.S. at 554, 87 S.Ct. at 1217-18. The doctrine of judicial immunity is justified "by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Antoine [v. Byers]*, 508 U.S. [249,] 435, 113 S.Ct. [2167,] 2171[(1993)].
>
> Thus, compelling public benefits outweigh the "unfairness and injustice to a litigant [that] may result on occasion, [because] 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Mireles,* 502 U.S. at 10, 112 S.Ct. at 287 (quoting *Bradley*, 80 U.S. (13 Wall.) at 347). If it were otherwise and judges were personally liable for erroneous decisions, then "the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits." *Forrester*, 484 U.S. at 226-27, 108 S.Ct. at 544.

*Barnes v. Winchell*, 105 F.3d 1111, 1115-16 (6th Cir.1997). The only exceptions to judicial immunity are acts which are non-judicial or which are taken in the absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12.

6

Case 2:13-cv-00076-JRG-DHI   Document 4   Filed 12/10/14   Page 6 of 16   PageID #: 17

The plaintiff's claims against the defendant judge sprang from alleged action taken in his judicial capacity under color of law to violate plaintiff's civil rights. Presiding over criminal cases and sentencing a criminal defendant "affect[s] the rights only of the individual plaintiff[] in specific judicial proceedings; these acts are example[s] of paradigmatic judicial acts," *Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir. 1994), all of which lie within the scope of Judge Dugger's jurisdiction and confer on him absolute immunity from this suit for damages. *Pierson*, 386 U.S. at 553-54 (1967).

Because defendant Dugger's challenged rulings and claimed omissions lie within "a sweeping range of judicial actions" protected by the doctrine of judicial immunity, *Barnes*, 105 F.3d at 1115, Judge Dugger and all plaintiff's claims against him are **DISMISSED**.

### 4. State Action

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hospital*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). *See also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.").

The second element is missing from plaintiff's claims against defendant Michael J. Laguardia, a private attorney, because Mr. Laguardia was not acting under color of state law when he committed the alleged attorney errors cited by plaintiff. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936-39 (1981). While private actors may be liable under § 1983, if they conspire with a state actor to violate civil rights, *id.* at 941, the complaint contains no allegations

7

of this nature. Therefore, at this time, the allegations against Attorney Laguardia fail to state a claim which would entitle plaintiff to relief under § 1983 and are also frivolous under 28 U.S.C. § 1915(e)(2).

Thus, Attorney Laguardia is **DISMISSED** as a defendant and all claims against him are **DISMISSED** for failure to state a § 1983 claim.

### 5. Eighth Amendment Violations

To state an Eighth Amendment claim, a plaintiff must show: (1) that the alleged deprivation is, objectively, sufficiently serious and (2) that the prison official who caused the deprivation had a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A sufficiently culpable state of mind—one of deliberate indifference—may be evinced by showing a correctional official knows of, but disregards, an excessive risk to inmate health or safety. *Id.* at 837 and 842.

#### a. Medical Claims

Plaintiff asserts that defendant Dr. Matthews and nurses failed to treat him properly for heart problems, even though he has been to the hospital three times for treatment of high blood pressure. Plaintiff also maintains that the Rogersville Hospital set up an appointment for him to see a cardiologist, but that he was not taken to the appointment. Plaintiff contends too that he needs a pacemaker and uses a C-Pap breathing machine at night, but has had the breathing machine, the cord, and water to operate the machine removed several times. Furthermore, plaintiff suffers from a bowel obstruction and "they won't send [him] for a colonoscopy to correct this problem" (Doc. 2, Comp. at 4).

Prison officials who are deliberately indifferent to the serious medical needs of inmates violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner's heart

8

Case 2:13-cv-00076-JRG-DHI   Document 4   Filed 12/10/14   Page 8 of 16   PageID #: 19

problems, high blood pressure, usage of a C-pap machine (presumably used to treat a breathing disorder such as sleep apnea), and bowel obstruction constitute serious medical needs.

However, it is well recognized that contentions of mere negligence will not entitle a plaintiff to relief under 42 U.S.C. § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986). The same thing is true of medical negligence. *Estelle*, at 106 (1976) (observing that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"). Where a prisoner receives some medical care and the dispute is over its adequacy, no constitutional claim has been stated either. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). By the same token, no viable Eighth Amendment claim is stated by allegations that a medical condition has been negligently diagnosed or treated, and the mere fact the victim happens to be a prisoner does not convert it into a constitutional violation. *Estelle*, 429 U.S. at 106.

Plaintiff's allegations that his heart problems and high blood pressure were not treated properly fall within the negligence genre of claims. Plaintiff acknowledges that he was seen by medical care providers (albeit not by a physician, until fifteen months after he was incarcerated). The fact that plaintiff may believe that more or different treatment should have been rendered in connection with his heart problems or that he should have had a pacemaker installed are allegations which sound in medical negligence and do not state a viable constitutional claim.

As to plaintiff's bowel obstruction condition, plaintiff does not indicate that he was refused treatment for this malady, only that a colonoscopy was not ordered or provided. The Eighth Amendment requires that reasonable steps be taken to address a substantial risk of serious harm to an inmate—it does not require the jail authorities to honor an inmate's demand for

9

specific medical care or to give him the best care possible. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

That seems to be the situation here. As the Court reads this claim, plaintiff desired a specific diagnostic test [i.e., a colonoscopy], but that test was not ordered. Although plaintiff did not receive the specific treatment he wanted, the Eighth Amendment does not guarantee a prisoner "unqualified access to health care." *Hudson v. McMi*llian, 503 U.S. 1, 9 (1992). A prisoner need only receive constitutionally adequate medical care, and nothing alleged in the complaint shows that the medical attention given to plaintiff with respect to his bowel obstruction fell beneath this standard. Indeed, "the question whether . . . additional forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107.

Plaintiff alleges that his C-Pap machine was removed three times, by Nurse Marge, but he has not stated the dates the machine was removed, or alleged any of the circumstances surrounding the removal. Nor has he named Nurse Marge as a defendant. Obviously, absent the necessary factual elaboration, there is nothing upon which to find that an individual(s) possessed the requisite state of mind of deliberate indifference.

Plaintiff alleges that the C-Pap machine was removed a fourth time, for one night only, by defendant Roy Matthews, when he placed plaintiff in the drunk tank. However, the only dates which appear in the complaint are set forth in the context of plaintiff's allegation that he did not see a physician until he had been confined in the jail for "15 mos" (Doc. 2, Compl. at 4). Without the specific dates on which the alleged unconstitutional conduct occurred, the Court cannot determine whether the claims might be barred by the one-year statute of limitations

applicable to § 1983 civil rights claims filed in a federal district court in Tennessee;[1] or whether the machine was removed for such a brief period of time that it does not rise to constitutional magnitude, *see Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) (noting that the length of time a condition exists is a factor in considering an Eighth Amendment claim), nor can the Court cannot require a defendant to answer to a charge which is not pegged to a specific period of time.

As these claims currently stand, they are conclusory because they lack the necessary factual particulars. A court need not conjure up facts not pled to support conclusory allegations. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). Conclusory contentions such as these do not state a claim for relief. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987).

      b.   *Excessive Force Claims*

In this claim, plaintiff maintains that defendant officer Bobby Matthews handcuffed him with his hands behind his back and then twice cracked his head against the wall, resulting in plaintiff being sent to the hospital for an MRI. Had plaintiff alleged the date or the approximate date this incident occurred, he would have stated a colorable claim of excessive force against this defendant *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

      c.   *Confinement conditions*

The first sub-claim in this category involves plaintiff's alleged placement in the "drunk tank" without being supplied with bed covers, his inmate bag, or a bathroom by defendant Roy Matthews, who also threatened to beat plaintiff in the head. Plaintiff has not alleged any of the surrounding circumstances, such as the temperature in the cell or whether he requested access to

---

[1] In *Wilson v. Garcia*, 471 U.S. 261 (1985), the Supreme Court held that a state's limitations statute determines the timeliness of § 1983 claims which arose in that state. *Id*. at 275-76. It has long been the case that the limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tenn. Code Ann. § 28-3-104(a). *Porter v. Brown*, 289 F. App'x 114, 116, 2008 WL 3838227, *2 (6th Cir. 2008).

11

the bathroom but was denied, and if so, by whom. And again, the Court has no idea as to the length of time to which plaintiff was subjected to the conditions in the drunk tank, as he has not supplied the date this incident allegedly happened and no time-frame concerning the duration of his detention in the drunk tank.

Although punishment may ensue where inmates are forced "to endure genuine privations and hardship over an extended period of time," *Bell v. Wolfish*, 441 U.S. 520, 542 (1979), conditions which exist for a brief period of time, generally, are not of the same caliber. *See Hutto*, 437 U.S. at 686-87 (finding that the certain conditions which would be "intolerably cruel for weeks or months" might be tolerable for "a few days"). Without this information, the Court cannot find an Eighth Amendment violation.

Furthermore, defendant Matthews' threats of physical violence are not actionable § 1983 claims either. To state a colorable constitutional claim, plaintiff must show that a federal right was actually denied and not merely threatened to be denied. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989). No such a showing has been made.

In the second sub-claim in this category, plaintiff alleges that he has lost fifty (50) pounds because "they don't feed enough here" (Doc. 2, Compl. at 2). Though inmates are entitled to a proper diet, *see Hutto*, 437 U.S. at 683 (prisoners require more than a 1000-calorie diet of a 4-inch square of grue—a substance created by mashing meat, potatoes, oleo, syrup, vegetables, eggs, and seasoning into a paste and baking it in a pan), sufficient to maintain normal health, *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir.1977), the complaint contains nothing to satisfy the state of mind requirement in an Eighth Amendment claim. To establish deliberate indifference, a plaintiff must plausibly allege a defendant was aware of facts from which he could infer that plaintiff faced a substantial risk of harm and that the defendant actually

12

drew the inference. *Farmer*, 511 U.S. at 837. Plaintiff has failed to do so and, as a consequence, has not stated a claim of unconstitutional living conditions with respect to his contentions about food.

### 5. First Amendment Violations

Plaintiff asserts that a brown envelope containing legal papers was opened when he received it and that his mail is not being properly processed in and out of the facility. Also, plaintiff complains that, although he is an indigent inmate who cannot afford to buy paper, envelopes, or stamps, he is only furnished one stamped postcard each month to correspond with his family.

The Court infers from the first assertion that the plaintiff is alleging that opening his legal mail outside his presence violated his First Amendment right to receive and send mail, subject to reasonable limitations for legitimate penal interests. *Turner v. Safley*, 482 U.S. 78, 93 (1987); *Wolff v. McDonnell*, 418 U.S. 539, 577(1974); *Jones v. Caruso*, 569 F.3d. 258, 267 (6th Cir. 2009) (citing *Jenkins v. Huntley*, 235 Fed.Appx. 374, 376 (7th Cir. 2007) for its holding "that prison officials risk violating an inmate's constitutional rights if they open an incoming letter marked as 'legal mail' outside of his presence).

Unfortunately for plaintiff, his legal mail claim is supported by no allegations of fact, such as the date(s) the mail was opened; who opened the mail (if plaintiff knows the officer's identity) or who delivered it to him; and whether the challenged action was taken pursuant to a jail rule or policy. Likewise, the assertion involving improper processing of mail lacks supporting contentions of fact. Thus, both mail claims are conclusory and do not state a claim for relief. *Morgan*, 829 F.2d at 12.

13

As to the claim that plaintiff was supplied with only one stamped postcard per month to write to his family, prisoners "retain their First Amendment rights to communicate with family and friends." *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994). However, it has been held that "an indigent prisoner does not have a constitutional right to unlimited free postage for non-legal mail." *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006) (citing *Van Poyck v. Singletary*, 106 F.3d 1558, 1559-60 (11th Cir.1997); *Hershberger v. Scaletta*, 33 F.3d 955, 957 (8th Cir. 1994)). It likewise has been held that furnishing a prisoner with only one free stamp a month for personal use is reasonably related to valid penological goals and does not deprive a prisoner of his First Amendment right. *Id.* at 535 (commenting that, "as an alternative to receiving only one free stamp per month, [plaintiff] may have his friends or family send money, which can be used to purchase stamps from the commissary").

The Court sees no constitutional violation based on the failure to supply plaintiff with more than one stamped postcard per month.

**6. Theory of Liability**

No specific allegations of wrongdoing have been made against Defendant Sheriff Ronnie Lawson or most of the other Hawkins County jail officials. Perhaps, plaintiff has named these officials as defendants under the theory that they are responsible for safe housing for inmates at the Hawkins County jail and for properly managing or supervising the staff and the operations at the jail. However, §1983 liability must be based on more than respondeat superior, or a defendant's right to control employees. *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995).

Though respondeat superior does not provide a valid basis of liability, *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell*, 436 U.S. at 691; *Rizzo v. Goode*, 423 U.S. 362

14

(1976), Plaintiff can still hold these defendants liable so long as he can demonstrate they implicitly authorized, approved, or knowingly acquiesced in the alleged wrongdoing of any of their subordinates. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989). But they cannot be held liable for a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) ("Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

Also, the failure of a prison official to review favorably a grievance provides no basis for section 1983 liability. *See Ramsey v. Martin*, 28 F.App'x 500, *502, 2002 WL 169559, *1 (6th Cir. Jan. 31, 2002); *see also Burks v Raemisch*, 555 F.3d. 592, 596 (7th Cir. 2005) (finding that "[plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor . . . and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right.").

As plaintiff does not allege defendant officials, including the Sheriff, knew of any of the complained of untoward treatment or wrongful living conditions, there is nothing from which to conclude these defendants condoned any subordinate's failure to act on any risks to plaintiff's health, safety, or well-being caused by the purported treatment or conditions of confinement. *See e.g., Estate of Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir.1995) ("The general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability.").

Defendant Sheriff Ronnie Lawson, therefore, is **DISMISSED** as a party in this suit.

Additionally, plaintiff asserts no theory of recovery against many of the defendants.  This is so because the complaint contains no allegations whatsoever against defendants Lieutenant Gallion, Autumn Armstrong, Paul Morrison, Scott Williams, Bill Henard, Cliff Evans, James Webe, Tyler Law, John North, Jessee Williams, Deputy Kevin Johnson, Deputy Skoalfield, Deputy Morrison, Deputy Mike L/N/U, Deputy Collins, Deputy Corey, Deputy Young or Gary Lawson.

Thus, these defendants likewise are **DISMISSED** for plaintiff's failure to state a claim against them.

### III.    Conclusion

In light of the above law and analysis, the complaint has not stated any viable constitutional claims at this juncture.  However, some of the noted deficiencies possibly may be cured by means of an amended complaint, *see LaFountain v. Harry*, 716 F.3d 944 (6th Cir. 2013), and plaintiff thus is advised that, unless he amends his pleading within twenty (20) days from the date on this order to correct the highlighted deficiencies, the Court will **DISMISS** his case for failure to state a claim and without further notice to him.

**ENTER:**

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE